IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES ex rel. TRACEY FERGUSON (#K-63269),<br><br>Petitioner,<br><br>v.<br><br>JOHN CHAMBERS,[1] Warden Danville Correctional Center,<br><br>Respondent. | Case No. 04 C 6417 |

**MEMORANDUM OPINION AND ORDER**

AMY J. ST. EVE, District Court Judge:

Before the Court is Petitioner Tracey Ferguson's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254(d)(1). For the reasons discussed below, the Court denies Ferguson's petition.

**BACKGROUND**

Ferguson does not challenge the statement of facts set forth in the Illinois Appellate Court opinions affirming the judgments of the Circuit Court of Cook County, and thus the Court presumes those facts for purposes of its review. *See* 28 U.S.C. § 2254(e)(1); *Barrow v. Uchtman*, 398 F.3d 597, 603 (7th Cir. 2005). The Court, therefore, adopts the underlying facts set forth by the Illinois Appellate Court, First Judicial District, in Ferguson's direct and post-conviction appeals. *See People v. Ferguson,* No. 1-98-0866, 1-98-1464, consolidated, (1st Dist.

---

[1] John Chambers is currently the Warden at Danville Correctional Center and is thus the proper Respondent in this habeas action. *See* Rule 2(a) of the Rules Governing Habeas Corpus Cases under 28 U.S.C. § 2254. The Court, therefore, substitutes Chambers as the Respondent. *See* Fed. R. Civ. P. 25(d)(1).

Sept. 15, 2000) (unpublished order); *People v. Ferguson,* No. 1-01-4262 (1st Dist. May 23, 2003) (unpublished order).

I.      **Trial Evidence**

At trial, Dexter Patterson testified that he and his twin brother, Darryl, were drinking beer at Barbara Edward's house in Maywood, Illinois on December 4, 1993. Leo Patterson, their brother, telephoned Edward's house that evening. Between 9:15 and 9:30 p.m., Dexter and Darryl left Edward's house and met their brother Leo at Fifth Avenue and Lexington Street. The three brothers then walked to a 7-11 store located at Ninth Avenue and Roosevelt Road. Leo purchased beer, while Darryl and Dexter waited outside. The three brothers then walked to Eighth Avenue near Lexington Street, where Leo visited the home of a friend. Darryl and Dexter waited outside in the driveway.

About five minutes later, Leo came out of his friend's house. As he approached the driveway, a young man called Leo's name, and then asked Leo, "when are you going to pay my money." Leo responded that he would pay "next Friday." The young man asked Leo for his money again. At that point, Dexter said, "hey, he is going to pay your money." The young man told Dexter, "I'm not talking to you."

The three brothers then walked east on Lexington Street toward Seventh Avenue, heading toward Leo's house on Sixth Avenue. Darryl, at the time, was walking about ten feet in front of Dexter and Leo. The brothers then heard a male voice calling Leo's name. They turned to look and Darryl saw a dark blue, four-door car driving down the street at a fast speed. From within the car, two people shot five or six times at the brothers from the passenger side. Dexter stated that he heard the car skid, then stop as the shots started. Dexter testified that both he and

2

Leo fell to the ground. Dexter got up and started running toward Leo's house.

The car then traveled east on Lexington toward Fifth Avenue. Darryl and Dexter returned to Leo's house and Dexter lay on a bed, bleeding from a shot in his buttocks. Darryl called the police, then ran to Lexington where Leo was lying on the grass. At that time, Leo was conscious, but not talking. Darryl covered Leo with his coat, then returned to Leo's house to meet the police. Darryl eventually accompanied the police officers to the police station and Dexter was transported to Loyola Medical Center. Leo died from a gunshot wound to the chest.

Dexter also testified that while he was being treated at the hospital, the police did not ask him for a description of the shooters. Upon inquiry by the court, Dexter responded that he gave a description of the shooter to the police the day after he was shot. Dexter, however, did not give a physical description of the shooters while on the witness stand.

Maywood Police Lieutenant, Luther Samuel, testified that he interviewed Darryl on the night of the incident. Lieutenant Samuel interviewed Dexter on December 7, 1993. Darryl described the shooters and the vehicle. Darryl told the lieutenant that the shooter in the front passenger side wore a black and gold Texas jacket. Lieutenant Samuel testified that Dexter told him that he could identify the offenders if he saw their faces. Subsequently, Darryl and Dexter both identified Petitioner Ferguson and his co-defendant in the police line-ups on December 22, 1993.

When interviewed by an assistant State's Attorney and a Maywood Police Officer on December 23, 1993, Frederick Johnson testified that he was sitting in the back seat of a blue Skylark and that the present petitioner, Ferguson, and his co-defendant pulled out guns while

they were all in the car. Although Johnson signed the statement that he made to the assistant State's Attorney, at trial he denied ever reading, giving, or signing the statement. The assistant State's Attorney then testified that Johnson gave the statement orally which was then transcribed. At that time, the assistant State's Attorney read the statement back to Johnson, Johnson made corrections, and then Johnson signed each page of the statement.

In the statement, Johnson stated that while he was in the back seat of the blue Skylark, Ferguson was sitting in the front passenger side seat. While they were driving, the co-defendant yelled to Leo Patterson that he owed Ferguson some money. Ferguson and the co-defendant then fired shots at Leo and his brothers. The statement also revealed that the co-defendant saw that a shot hit Dexter in the buttocks and Leo in the chest. At trial, Johnson claimed that he made the statement because he was afraid of going to jail and because the police had harassed him.

After the jury found Ferguson guilty of first degree murder and aggravated battery with a firearm, defense counsel filed a motion for a new trial. Ferguson also filed a pro se motion for a new trial alleging ineffective assistance of counsel. The trial court allowed defense counsel to withdraw and Ferguson retained new counsel and withdrew his pro se motion. New counsel filed an amended motion for a new trial that the trial court denied.

## II.     Procedural Background

On September 4, 1997, following a jury trial in the Circuit Court of Cook County, the jury found Ferguson guilty of first degree murder and aggravated battery with a firearm. The Circuit Court sentenced him to 50 years imprisonment for the first degree murder conviction and a 30 years imprisonment for the aggravated battery with a firearm conviction.

Ferguson appealed his conviction to the Illinois Appellate Court, First Division, raising the following claims: (1) the trial court violated his right to due process of law by assuming the role of the prosecutor by limiting cross-examination of a witness and by invading the province of the jury on key factual questions of identification; (2) the State improperly bolstered its identification evidence by introducing a witness' out-of-court description of the offender. (R. 10-1, Respondent's Rule 5 Exhibits, Ex. A.) On September 15, 2000, the Illinois Appellate Court affirmed Ferguson's conviction and sentence. (Ex. B.)

Next, Ferguson filed a petition for leave to appeal to the Illinois Supreme Court. In his petition, he raised the same issues that he presented in his direct appeal to the Illinois Appellate Court. (Ex. C.) On November 29, 2000, the Illinois Supreme Court denied his petition for leave to appeal. (Ex. D.)

On May 3, 2001, Ferguson filed a petition pursuant to the Illinois Post-Conviction Hearing Act raising the following claims: (1) he was entitled to a new trial based on newly discovered evidence of actual innocence; (2) ineffective assistance of trial counsel for failing to investigate Zachary Peavey as the shooter of Leo Patterson; (3) ineffective assistance of trial counsel for failing to investigate and present alibi testimony; (4) ineffective assistance of trial counsel for failing to investigate and interview Frederick Johnson about his background; (5) ineffective assistance of trial counsel for failure to file motions to quash the arrest warrant and suppress evidence; (6) ineffective assistance of trial counsel because counsel failed to investigate the case, did not review the co-defendant's trial transcripts, and did not adequately prepare to effectively cross-examine witnesses; (7) ineffective assistance of trial counsel for failing to interview and present Frederick House as a witness; (8) ineffective assistance of trial counsel for

5

failure to prepare Ferguson to testify and for incompetently presenting a defense; (9) ineffective assistance of trial counsel for failing to preserve issues for appeal; and (10) ineffective assistance of appellate counsel for failing to raise the ineffectiveness of trial counsel.  (R. 24-1, Additional State Court Materials, Ex. N, O, P).  On November 9, 2001, the Circuit Court of Cook County denied Ferguson's post-conviction petition.  (Ex. F.)

On May 24, 2002, Ferguson, by counsel, appealed the dismissal of his post-conviction petition to the Illinois Appellate Court, First Judicial District, alleging that his trial counsel was ineffective for failing to seek pre-trial ballistics testing on a gun.  (Ex. G.)  On May 23, 2003, the Illinois Appellate Court affirmed the Circuit Court's denial of Ferguson's post-conviction petition.  (Ex. H.)

On June 11, 2003, Ferguson filed a pro se petition for leave to appeal with the Illinois Supreme Court raising the same claim presented to the Illinois Appellate Court on post-conviction appeal.  (Ex. I.)  On October 7, 2003, the Illinois Supreme Court denied Ferguson's petition for leave to appeal.  (Ex. J.)

Ferguson, by counsel, filed the present petition for a writ of habeas corpus on October 5, 2004.  Ferguson brings ineffective assistance of trial counsel claims based on his attorney's failure to:  (1) file motions to quash the arrest warrant and suppress evidence; (2) investigate Frederick Johnson's mental and psychological disabilities and file a motion to preclude Johnson's testimony and statements; (3) investigate and produce evidence of Zachary Peavey's possession of a weapon and admission of guilt; (4) investigate State produced discovery and transcripts from Ferguson's co-defendant's trial; (5) investigate and interview an alibi witness; and (6) prepare Ferguson to testify at trial.

6

## LEGAL STANDARDS

**I.    Habeas Standard**

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), the Court cannot grant habeas relief unless the state court's decision was (1) contrary to, or an unreasonable application of law clearly established by the Supreme or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Barrow v. Uchtman*, 398 F.3d 597, 602 (7th Cir. 2005) (citing 28 U.S.C. § 2254(d)(1-2)); *see also Williams v. Taylor,* 529 U.S. 362, 402-03, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).  In *Williams*, the Supreme Court explained that a state court's decision is "contrary to" clearly established Supreme Court law "if the state court arrives at a conclusion opposite to that reached by this Court on a question of law" or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to ours."  *Id.* at 405; *see also Brown v. Payton,* ___U.S.___, 125 S.Ct. 1432, 1438-39, ___ L.Ed.2d ___ (2005).

Under the "unreasonable application" prong, a habeas petitioner must demonstrate that although the state court identified the correct legal rule, it unreasonably applied the controlling law to the facts of the case.  *See Williams*, 529 U.S. at 407.  "This reasonableness determination is quite deferential, such that a state decision may stand as long as it is objectively reasonable, even if the reviewing court determines it to be substantively incorrect."  *Barrow,* 398 F.3d at 602; *see also Lockyer v. Andrade,* 538 U.S. 63, 76, 123 S.Ct. 1166, 1174, 155 L.Ed.2d 144

(2003) (unreasonable application more than an incorrect or erroneous decision). To be considered "unreasonable" under this standard, a state court's decision must lie "well outside the boundaries of permissible differences of opinion." *Hardaway v. Young,* 302 F.3d 757, 762 (7th Cir. 2002); *see also Hubanks v. Frank*, 392 F.3d 926, 929 (7th Cir. 2004) (state court decision must be minimally consistent with facts and circumstances of the case or one of several equally plausible outcomes).

## II.     Procedural Default

Before bringing a habeas claim in federal court, the petitioner must exhaust all remedies available to him in state court. *Bintz v. Bertrand,* 403 F.3d 859, 863 (7th Cir. 2005). In other words, the "petitioner must establish that he fully and fairly presented his claims to the state appellate courts, thus giving the state courts a meaningful opportunity to consider the substance of the claims that he later presents in his federal challenge." *Id.*; *see also O'Sullivan v. Boerckel,* 526 U.S. 838, 845, 848, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999). Fair presentment requires a petitioner to put forward operative facts and controlling legal principles for each of his claims. *Bintz,* 403 F.3d at 863. "A habeas petitioner who has exhausted his state court remedies without properly asserting his federal claim at each level of state court review has procedurally defaulted that claim." *Lewis v. Sternes,* 390 F.3d 1019, 1026 (7th Cir. 2004).

A petitioner may overcome procedural default by demonstrating cause for the default and actual prejudice as a result of the alleged violation of federal law, or by showing that failure to consider the claims will result in a fundamental miscarriage of justice. *Coleman v. Thompson,* 501 U.S. 722, 750, 111 S.Ct. 2546, 2565, 115 L.Ed.2d 640 (1991). A fundamental miscarriage of justice occurs when a petitioner can establish that "a constitutional violation has probably

resulted in the conviction of one who is actually innocent." *Murray v. Carrier,* 477 U.S. 478, 496, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986); *see also Hayes v. Battaglia,* 403 F.3d 935, 938 (7th Cir. 2005) (factual innocence relieves a petitioner of procedural default).

## **ANALYSIS**

Here, Ferguson concedes that he has procedurally defaulted all of his habeas claims, but argues that refusal to consider his petition would result in a miscarriage of justice because a constitutional violation has probably resulted in the conviction of one who is actually innocent. *See Murray v. Carrier,* 477 U.S. 478, 496, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986).

To establish actual innocence, a petitioner must support his allegations "with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." *Schlup v. Delo,* 513 U.S. 298, 324, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995); *see also Gomez v. Jaimet,* 350 F.3d 673, 679 (7th Cir. 2003). The petitioner must also establish that "it was more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Schlup,* 513 U.S. at 327. "To demonstrate innocence so convincingly that no reasonable jury could convict, a prisoner must have documentary, biological (DNA), or other powerful evidence: perhaps some non-relative who placed him out of the city, with credit card slips, photographs, and phone logs to back up the claim." *Hayes,* 403 F.3d at 938. Because this type of evidence is unavailable in the vast majority of cases, actual innocence claims are rarely successful. *Schlup,* 513 U.S. at 324.

As Respondent correctly asserts, Ferguson does not provide the Court with any new evidence that he is actually innocent. Instead, he analyzes the trial court evidence in detail, highlighting flaws in the State's case against him. Ferguson misunderstands the relevant

9

standard. To establish his actual innocence claim, he must present the Court with new, reliable evidence that was not presented at trial. *Schlup,* 513 U.S. at 324. Simply rehashing the trial evidence does not suffice.

In further support of his actual innocence claim, Ferguson also attacks trial counsel's strategy as to what evidence he presented at trial and his failure to investigate an alleged alibi witness and failure to request ballistics testing. In support of his ineffective assistance argument, Ferguson presents new evidence that the Illinois Supreme Court suspended his trial counsel's license in unrelated cases. This new evidence, however, does not support Ferguson's claim of actual innocence. *See Hayes,* 403 F.3d at 938 (factual innocence relieves petitioners of procedural default when error affects finding of guilt). Instead, this new evidence, at best, supports a claim of ineffective assistance of counsel in these unrelated cases.

Finally, Ferguson's analysis of the trial evidence and this new evidence concerning his trial counsel simply do not establish that "it was more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Schlup,* 513 U.S. at 327. Without more, Ferguson's actual innocence claim fails. Therefore, Ferguson has not overcome his procedural default, and thus the Court must deny his habeas claims.[2]

---

[2] Ferguson also seeks an evidentiary hearing in this matter, but fails to make any arguments under the appropriate standard. *See* 28 U.S.C. § 2254(e)(2). Therefore, the Court denies this request.

## CONCLUSION

For these reasons, the Court denies Ferguson's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

Dated: May 31, 2005

                          **ENTERED**

                          _____
                          **AMY J. ST. EVE**
                          **United States District Judge**